## John Leach and George Leach v. S. C. Alexander.

*Contract—Parol evidence to vary written agreement—Binding instructions.*

On the trial of a sheriff's interpleader the title which the plaintiffs showed was one of absolute ownership, evidenced by a written agreement under seal, followed by physical possession of the property. The defendant attempted to prove a contemporaneous parol agreement which changed the character of the transaction to a pledge of the property as security for a debt, instead of the sale evidenced by the written agreement, but the evidence produced by the defendant, not being such as to warrant the court in submitting to the jury the question of the existence of a parol contemporaneous agreement, varying the terms of the sealed instrument, it was *held* the plaintiffs were entitled to binding instructions.

*Issue raised by pleading—Allegata and probata—Charge of court.*

On trial of a sheriff's interpleader, where the plaintiffs claimed the property as absolute owners, and the issue was framed accordingly, the trial judge would not be warranted in holding under the pleadings that even if the transfer of the property was as security for a debt, the plaintiffs were entitled to a verdict because the debt had not been paid.

Argued March 14, 1899.   Appeal, No. 12, March T., 1899, by defendant, from judgment of C. P. Cumberland Co., Feb. T., 1898, No. 46, on verdict for plaintiffs.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Affirmed.   Opinion by W. D. PORTER, J.

Proceedings on feigned issue.   Before BIDDLE, P. J.

The facts sufficiently appear in the opinion of the court and the charge of the court below, which is as follows:

[After a careful consideration of the evidence in this case, we have concluded that in accordance with well settled principles of law your verdict should be in favor of plaintiffs.] [1]

[The bill of sale dated May 29, 1896, is an absolute conveyance of all the right, title and interest of Wilson Bave under the lease of June 8, 1895, yet the defendant sets up that this conveyance was in reality only intended as collateral security for the payment of notes aggregating $350, on which Leach was security for the said Bare. Even assuming this to be true in connection with the undisputed evidence that $290 of that indebtedness is still unpaid, it is apparent that the title to the property embraced in the bill of sale is in the plaintiffs' possession, and they are entitled to retain the same until the debt is fully liquidated.] [2]

[The defendant further contends that under the circumstances he may sell the equity of Wilson Bave in the items covered by the levy, and in that way acquire, or enable some one else to acquire, a title to these items subject to the payment of the Leach notes. It will be noticed that the levy is upon the property of defendant, and not only upon Bear's interest in the same, and the issue has been framed and tried accordingly, consequently a verdict for defendant would take the title of the property out of the plaintiffs who are admittedly authorized to hold it at least as collateral.] [3]

[Defendant has also sought to prove that the plaintiffs did not have possession of the cattle yard at the time the judgment was entered and execution issued, and that the bill of sale was therefore a constructive fraud upon the creditors of Bare and void as to them. In this effort he has not succeeded, for no one undertakes to say that Bare was in possession except himself, and even he admits that he was peremptorily ejected from the premises about ten days before the levy was made and never again took charge of the property, although he said he frequently made visits to it. The testimony is clear and satisfactory that the plaintiffs continued in possession from that time under the bill of sale, and that a week before execution was issued the defendant was apprised of their ownership by hearing the bill of sale read aloud by its custodian, Squire Newcomer. He had therefore both constructive and actual notice that Bare, for a valuable consideration, had conveyed all his interest in the items covered by the lease.] [4]

[Whether enough evidence was offered by defendant on the subject of the bill of sale being merely collateral security to

warrant a submission of that question to the jury need not be determined. We are of opinion at first blush that there was not, but as the case is disposed of on other grounds no necessity exists for a discussion on this phase of the case or a ruling upon it.] [5]

[The prothonotary will therefore take your verdict in favor of plaintiffs for the items of property embraced in the statement.] [6]

Verdict for plaintiffs for the items of property embraced in plaintiffs' statement. Defendant appealed.

*Errors assigned* were (1–6) to portions of the judge's charge, reciting same. (7) In not instructing the jury that inasmuch as the plaintiffs had set up a claim of absolute ownership to the property included in the levy, it was a question for the jury, under the evidence in the case, whether or not the plaintiffs held the property as collateral security for the payment of the obligations due by the defendant in the execution, and if they found that the interest of plaintiffs was only a qualified interest, their verdict must be in favor of defendant. (8) In not submitting the case to the jury upon the evidence, to determine whether or not the plaintiffs had made out their claim of absolute ownership, as set forth in their statement filed in the issue awarded, and whether or not there had been such a change of possession as is required by law to prevent an execution creditor from levying upon and selling the same, and whether or not the defendant, Wilson Bare, had any interest whatever in said property levied upon.

*S. M. Leidich,* with him *H. H. Mercer,* for appellant.—It is contended by appellant that the case should have been submitted to the jury upon the several issues of fact raised by the evidence which was admitted by the court in the case.

A case almost identical with the case at bar is that of Meyers v. Prentzell, 33 Pa. 482, where it is held:

" A third party who has claimed to be the owner of goods levied on by the sheriff as the property of the defendants in an execution, will not, on the trial of an issue framed under the sheriff's interpleader act, be permitted to show a right to the

possession of them as lessee ; having made a claim to the absolute ownership, and thus stayed the plaintiff's execution, he cannot set up a limited interest on the trial."

The same principle was affirmed in Dale v. Pierce, 85 Pa. 474, Stewart & Co. v. Wilson, 42 Pa. 450, and Waverly Coal Co. v. McKennan, 110 Pa. 599.

The evidence of the parol agreement which was received by the court was clearly admissible, and the court very properly received it: Powelton Coal Co. v. McShain, 75 Pa. 238 ; Ferguson v. Rafferty, 128 Pa. 337.

There can therefore be no question that the assignment was made for the consideration contended for by the defendant in the issue, and the said claimants having gotten possession of a valuable property as security for a very small price, have tried to retain possession of the same contrary to the agreement upon which it was conveyed to them.

This evidence should have been submitted to the jury : Bucklin v. Davidson, 155 Pa. 362 ; Lerch v. Bard, 153 Pa. 573.

It is for the jury to say whether a sale of personal property was such as to make the sale valid as against subsequent judgment creditors : Barr v. Boyles, 96 Pa. 31 ; Garretson v. Hackenberg, 144 Pa. 107.

*Arthur R. Rupley*, with him *Caleb S. Brinton*, for appellees. —On the trial of the issue not a single witness testified that Bare was induced to sign the bill of sale by any fraud, or that there was any accident or mistake in the drawing up of the instrument.

There is only the bald statement by Bare that the Leaches, when the bill of sale was executed, promised to hold the property in controversy simply as collateral security. The alleged promise is therefore in flat contradiction of the terms of the instrument (bill of sale) signed and sealed by Wilson Bare.

Should the question then of the existence of a contemporaneous parol agreement have been submitted to the jury ? See Thomas & Sons v. Loose, 114 Pa. 35, Wodock v. Robinson, 148 Pa. 503, and Jackson v. Payne, 114 Pa. 67.

The same principle was affirmed in Van Voorhis v. Rea, 153 Pa. 19, and Halberstadt v. Bannan, 149 Pa. 51, and numerous other cases.

OPINION BY W. D. PORTER, J., January 17, 1900:

By a writing under seal, duly executed, Wilson Bare sold, assigned and transferred to John Leach and S. B. Leach all of his right, title and interest of, in and to a lease for real estate and certain fixtures, etc., in and about the premises, which were used as a butchering and stock yard plant. The consideration named is $315, and the writing concludes: "The said Wilson Bare hereby delivers full possession of the said buildings, fixtures, yards and ground to the said S. B. and John Leach." S. B. Leach sold and conveyed his interest to George Leach. This property was levied upon by the sheriff by virtue of an execution issued on a judgment of S. C. Alexander against Wilson Bare. An interpleader issue was framed at the instance of the sheriff, and at the trial of the cause the defendant urged that the transaction between the Leaches and Bare was understood and intended by the parties to it to be a mere collateral security for the payment of an indebtedness of Bare to the Leaches; and it was shown that, at the time of the transfer of the property, the Leaches were creditors of Bare in an amount equal to the consideration mentioned in the transfer. The plaintiff in the issue objected to every offer of evidence which tended to impeach the writing; but it was admitted by the court, and the jury were then instructed to return a verdict for the plaintiff in the issue, for the reason that "it is apparent that the title to the property embraced in the bill of sale is in the plaintiffs' possession and they are entitled to retain the same until the debt is fully liquidated." The writing is a plain transfer of the interest of Wilson Bare in all the property embraced in the levy, and there is no suggestion of fraud, accident or mistake in the execution of the paper under which plaintiffs took actual and exclusive possession. The execution creditor had actual notice of the written contract between the Leaches and Bare and that the former held the exclusive possession of the property before he issued his writ, and the only evidence adduced which directly affected the integrity of the writing was that of Wilson Bare, one of the parties to it, who sought to establish a contemporaneous parol agreement which, in effect, contradicted the terms of the writing and practically nullified it. The assignments of error all relate to the charge of the court, as the repeated objections of the plaintiffs to the admissi-

bility of the evidence which affected the writing were not sustained.

There was no such evidence of a retention of possession by the vendor as to raise a question of legal fraud. The plaintiffs claimed the property as absolute owners, and the issue was framed accordingly; if, therefore, the evidence only established the right of plaintiffs to hold the property as security for a debt, they had failed to sustain their claim, and the defendant was entitled to a verdict: Meyers v. Prentzell, 33 Pa. 482; Stewart & Co. v. Wilson, 42 Pa. 450; Dale v. Pierce, 85 Pa. 474; Waverly Coal Co. v. McKennan, 110 Pa. 599. The learned court below, in holding that, under the pleadings, even if the transfer of the property was as security for a debt, the plaintiffs were entitled to a verdict, because the debt had not been paid, was not in harmony with the authorities.

The title which the plaintiffs showed was one of absolute ownership, evidenced by a written agreement under seal, followed by physical possession of the property. There was no evidence whatever indicating that the transaction was covinous, or that either Leach or Bare intended to defraud, hinder or delay the creditors of the latter. In the absence of such evidence Alexander stood in the same position as Bare, when it came to attacking the validity or varying the terms of the written agreement. The defendant attempted to prove a contemporaneous parol agreement which changed the character of the transaction to a pledge of the property as security for a debt, instead of the sale evidenced by the written agreement under seal. The only witness who testified to any facts tending to support the allegation of a parol contemporaneous agreement was Bare, the debtor, and his testimony is far from being clear and precise. It amounts to but little more than a statement that his understanding was that he was to get the property back when the debt was paid, but is very indefinite as to the nature of the parol agreement upon the part of Leach. In reply to the direct question, his answer indicated great uncertainty. "Q. Did Mr. Leach agree to that? A. Mr. Leach agreed to it so far as I know; I know nothing to the contrary; when the debt was paid, it was to come back to me." H. H. Mercer, Esq., who prepared the written agreement, testified as follows, viz: "Q. Did you put everything

into this agreement that was agreed on in your office at that time? A. What do you mean by everything; they told me exactly what was there, and I put in the material parts in that lease. Q. As they were agreed on at that time? A. Yes, sir." Contracts under seal are not to be stricken down upon the uncorroborated testimony of one of the parties.

The written agreement provided for a change of possession, and its requirements were fully complied with, and plaintiffs took exclusive possession of the property. The evidence produced by the defendant was not such as to warrant the court in submitting to the jury the question of the existence of a parol contemporaneous agreement, varying the terms of the sealed instrument. The plaintiffs were entitled to binding instructions.

Judgment affirmed.